UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

GREGORY FINLEY,

 Plaintiff,

v.           Case No. 2:21-cv-10-JLB-NPM

COMMISSIONER OF SOCIAL SECURITY,

 Defendant.

---

## REPORT AND RECOMMENDATION

 Plaintiff Gregory Finley seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 18), [1] and the parties filed a joint memorandum (Doc. 25). As discussed in this report, the decision of the Commissioner should be affirmed.

## I. Eligibility for Disability Benefits and the Administration's Decision

### A. Eligibility

 The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death or that have lasted or can be expected to last for a continuous period of not less than

---

[1] Cited as "Tr." followed by the corresponding page number.

twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.     Factual and procedural history

On November 2, 2018, Finley applied for disability insurance benefits. (Tr. 68, 79, 81, 93, 152). He asserted an onset date of May 31, 2018, alleging disability due to the following: herniated nucleus pulposus; lumbar disc; status post chemonucleolysis, radioculopathy of left leg; adjustment disorder; anxiety; depressed mood; gastroesophageal reflux disease; chronic irritable bowel syndrome ("IBS"); hypothyroidism; heel spurs; and gout. (Tr. 67-68, 80-81, 164). As of the

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

alleged onset date, Finley was 53 years old with an associate degree. (Tr. 67, 80, 165, 338). He previously worked as an order clerk, advertising manager, and advertising production manager. (Tr. 23-24, 165, 195-202).

On behalf of the administration, a state agency[5] reviewed and denied Finley's application initially on May 1, 2019, and upon reconsideration on August 20, 2019. (Tr. 79, 93). At Finley's request, Administrative Law Judge (ALJ) Raymond Rodgers held a telephonic hearing on July 28, 2020 (Tr. 39-66, 109), and on August 5, 2020, the ALJ issued a decision finding Finley not disabled. (Tr. 8-24). Finley's timely request for review by the administration's Appeals Council was denied. (Tr. 1-4). Finley then brought the matter to this court, and the case is ripe for judicial review.

## C.    The ALJ's decision

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 404.1520(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

---

[5] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 404.1503(a).

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 404.1520(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 404.900(b). Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 404.1512 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir.

1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Finley had not engaged in substantial gainful activity since the alleged onset date. (Tr. 14). At step two, the ALJ characterized Finley's severe impairments as: degenerative disc disease of the lumbar spine; mild osteoarthritis of the right foot; status post remote right shoulder rotator cuff tear; bilateral calcaneal enthesopathy; perennial tendinitis; IBS; and obesity. (Tr. 14). At step three, the ALJ determined Finley did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 17).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to: lift/carry 10 pounds occasionally 5 pounds frequently; sit for six hours in an eight-hour workday; stand and/or walk for two hours in an eight-hour workday; no operation of foot controls; permitted to stand and stretch after 30 minutes of work while being off task for one minute; occasional climbing of ramps or stairs, but no climbing of ladders ropes or scaffolds; occasional balancing, stooping, kneeling and crouching; no crawling; frequent overhead reaching with the right upper extremity; must avoid concentrated exposure to vibration; and no exposure to hazardous machinery.

(Tr. 18).

At step four, the ALJ determined that Finley could perform his past relevant work. (Tr. 23). A vocational expert classified Finley's past work as follows:

- *Manager advertising* (DOT# 164.117-010); sedentary; SVP 8;

- *Order clerk* (DOT# 249.362-026); sedentary; SVP 4; and

- *Production manager advertising* (DOT# 141.137-010); sedentary; SVP 7

(Tr. 23-24).[6] As a result, there was no need for the ALJ to proceed to step five of the evaluation. Thus, for purposes of the Act, the ALJ concluded Finley was not disabled from May 31, 2018, the alleged onset date, through August 5, 2020, the date of decision. (Tr. 24).

## II.   Analysis

Finley's appeal presents the following questions for review:

1. whether remand is required because the statute governing the removal of the Commissioner violated the separation of powers;

2. whether the ALJ properly considered Finley's mental impairments;

3. whether the ALJ properly considered Finley's irritable bowel syndrome; and

4. whether the ALJ properly considered Finley's past relevant work.

---

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

## A.     Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence

"preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

### B.     There was no separation-of-powers violation warranting remand

Finley argues the administration's structure violates the separation of powers due to the statutory provision governing the President's authority to remove the Commissioner (42 U.S.C. § 902(a)(3)). (Doc. 25, pp. 47-50). And to the extent it is construed as limiting the President's authority to remove the Commissioner without cause, the Commissioner agrees that the removal provision is unconstitutional. (Doc. 25, p. 50). But Finley's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill, an officer removable at will and not subject to 42 U.S.C. § 902(a)(3)'s tenure protection. "Although the statute unconstitutionally limited the President's authority to remove the confirmed [Commissioner], there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the [administration] as void." *Collins v. Yellen*, 141 S. Ct. 1761, 1787 (2021); *see also id*. at 1802 (Kagan, J. concurring) ("Consider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year. … I doubt the mass of SSA decisions—which would not concern the President

at all—would need to be undone .... When an agency decision would not capture a President's attention, his removal authority could not make a difference.").

There is no indication the President attempted or desired the removal of the Commissioner while this case was pending before the administration. And Finley has neither shown a nexus between the removal restrictions and his claim, nor has he plausibly alleged that the statutory tenure protection affected the ALJ's decision or caused him harm. For these reasons, this court, like its sister courts throughout the country, has repeatedly held this separation-of-powers argument meritless, and it should do so again here. *See Hultgren v. Comm'r of Soc. Sec.*, No. 2:20-cv-892-SPC-NPM, 2022 WL 1085547, *4-5 (M.D. Fla. Feb. 9, 2022), *report and recommendation adopted*, 2022 WL 736176 (Mar. 11, 2022); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21-cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022); *Tibbetts v. Comm'r of Soc. Sec.*, No. 2:20-cv-872-SPC-MRM, 2021 WL 6297530 (M.D. Fla. Dec. 21, 2021), *report and recommendation adopted*, 2022 WL 61217 (Jan. 6, 2022); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838 (M.D. Fla. Nov. 23, 2021), *report and recommendation adopted*, 2022 WL 88160 (Jan. 7, 2022).

## C.    The ALJ properly considered Finley's mental impairments

Finley appears to argue the ALJ should have included mental limitations in the RFC based on the ALJ's findings at steps two and three that Finley had mild

limitations in all four areas of mental functioning. (Doc. 25, p. 11).[7] And he implies the ALJ should not have followed the administration's sequential evaluation— rather, he claims the ALJ should have focused on the specific requirements of Finley's past relevant work as early as step two. (Doc. 25, pp. 12-13 (citing step two discussion at Tr. 15-16), 14-16). His arguments have no merit.[8]

The ALJ proceeds through a five-step sequential evaluation process, ***in that order***. *See* 20 C.F.R. §§ 404.1520(a)(4) ("The sequential evaluation process is a series of five 'steps' that we follow in a set order."), 404.1529(d) ("We follow a set order of steps to determine whether you are disabled."). At step two, an ALJ considers the severity of a claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is not severe "if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a); *see also* 20 C.F.R. § 404.1520(c).

When evaluating mental impairments, the regulations set forth a "special technique" in 20 C.F.R. § 404.1520a, which the ALJ followed. (Tr. 14-16). At step

---

[7] Finley does not challenge the ultimate step-two-and-three findings, so any arguments as to these issues are forfeited. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (noting claimant waived arguments by not expressly challenging ALJ's findings); *Access Now, Inc. v. Sw. Airlines*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

[8] Finley cites to 20 C.F.R. § 404.1521(e)(3), but this subsection does not exist. Moreover, his citations to supplemental-security-income regulations are inapplicable; this case concerns an application for disability insurance benefits. (Doc. 25, p. 11).

two, the ALJ did not find any mental impairments severe. (Tr. 14). Rather, the ALJ found anxiety and depression were medically determinable impairments that "did not cause more than minimal limitation in [Finley's] ability to perform basic mental work activities and are therefore non-severe." (Tr. 14). In making this finding, the ALJ considered the broad areas of mental functioning, and he found Finley had mild limitations in each of the four areas. (Tr. 15-16).[9]

"Mild" connotes a "slight" limitation. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments) at 12.00(F)(2)(b). Findings of mild limitations across the four domains of mental functioning generally warrant a conclusion that the mental impairment is not severe. 20 C.F.R. § 404.1520a(d)(1). Although the ALJ did not find any mental impairments severe, he found several physical impairments were severe, so he proceeded through the sequential process. (Tr. 14-17).

Before step four, the ALJ must assess the claimant's RFC, which is the most a claimant can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work

---

[9] When rating a claimant's degree of limitation in the four areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), the agency uses a five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale (extreme) represents a degree of limitation that is incompatible with the ability to do any gainful activity. 20 C.F.R. § 404.1520a(c)(4). Here, the ALJ found only mild limitations in each of the four areas.

setting." 20 C.F.R. § 404.1545(a)(1). An ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e); *see* 20 C.F.R. §§ 404.1545(a)(1), (3), 404.1520a(c)(1). So, the ALJ must consider *all* of the claimant's medically determinable impairments, including those that are not "severe." 20 C.F.R. § 404.1545(a)(2), (e).

The ALJ did so here. Relevant to this discussion, the ALJ considered Finley's subjective statements pertaining to his mental impairments, as well as the objective medical evidence and opinion evidence relating to his mental impairments. (Tr. 14, 21-23). The ALJ's decision thoroughly discussed objective and subjective evidence during the steps-two-and-three analysis, and the ALJ also did so in the RFC discussion. (*See* Tr. 14-15, 21-23). As a whole, the ALJ considered Finley's allegations that anxiety and depression cause difficulty with attention, concentration, memory, and social functioning. But the ALJ found these allegations were inconsistent with the objective evidence, indicating the absence of any work-related limitations. (Tr. 14).

For example, the ALJ discussed the evaluation of consultative examiner and licensed psychologist, Michael Inman, Ph.D. Inman evaluated Finley on April 23, 2019, and found him to be very cooperative with fair insight, logical and goal directed thoughts, normal thought content, and with an upbeat and outgoing affect

with normal emotional reactivity despite reports of being depressed all the time. He also found Finley to be alert and orientated with good immediate memory and no difficulty with recent and long-term memory along with an average IQ. In fact, Inman found that Finley's mental status assessment did not indicate any cognitive impairment and that his emotional distress appeared to have lessened. And Inman opined that Finley's ability to get along with others was quite good. (Tr. 14-15 (citing Tr. 337-342)). The ALJ found Inman's opinion persuasive. (Tr. 22).[10]

Finley argues that since the ALJ found Inman's opinion persuasive and Inman had opined to mild mental-function limitations for unskilled work, the ALJ should have found Finley more than mildly limited in the areas of mental functioning for skilled or semi-skilled work. (Doc. 25, pp. 12-15). But this turns the sequential evaluation on its head. The administration's disability analysis does not assess a claimant's functional capacity based on their prior relevant work. Rather, it arrives at an RFC based on the claimant's medically determinable impairments, and then determines whether the functional demands of a claimant's prior relevant work exceed the RFC.

Furthermore, as the ALJ observed, the mental limitations identified at step two are not an assessment of a claimant's RFC; instead, they are used only to rate

---

[10] Finley does not challenge the ALJ's treatment of any opinion evidence, so any argument as to this issue is forfeited. *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013).

the severity of mental impairments at steps two and three of the sequential evaluation process. (Tr. 16); *see* 20 C.F.R. §§ 404.1520(a)(4)(ii)-(iii), 404.1520a(d)(1), (2); SSR 96-8p, 1996 WL 374184, *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified [for the listings] criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

Indeed, the regulations state that at step two, the agency "will ***not*** consider your age, education, and ***work experience***." 20 C.F.R. § 404.1520(c) (emphasis added). Only after proceeding beyond step three will the ALJ for the first time compare the RFC "with the physical and mental demands of your past relevant work." 20 C.F.R. § 404.1520(f); *see also* 20 C.F.R. § 404.1560(a)-(b) (noting if agency cannot decide whether a claimant is disabled at one of the first three steps of the sequential evaluation process, then the agency will, for the first time, compare the RFC "with the physical and mental demands of your past relevant work.").

Finley cites several non-binding district court opinions. (Doc. 25, pp. 13-14 (citing *Ynzunza v. Astrue*, No. cv 07-7166-PLA, 2010 WL 3270975, *8-9 (C.D. Cal. Aug. 17, 2010); *Agron v. Saul*, No. 3:19-cv-466-RV-EMT, 2020 WL 1496020, *8 (N.D. Fla. Feb. 25, 2020), *report and recommendation adopted*, 2020 WL 1493492 (N.D. Fla. Mar. 27, 2020); *Melvin R. v. Comm'r, Soc. Sec. Admin.*, No. 1:17-cv-02458-AJB, 2018 WL 4328197, *14-15 (N.D. Ga. Sept. 10, 2018); *Alesia v. Astrue*,

789 F. Supp. 2d 921, 933-934 (N.D. Ill. 2011); *McCaffrey v. Astrue*, No. 10-cv-01943-PAB, 2011 WL 4536980, *11-12 (D. Colo. Sept. 30, 2011)). But the "decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) (citing 18 J. Moore, et al., Moore's Federal Practice § 134.02[1][d] (3d ed. 2011)). And these decisions are not persuasive.

For example, *Agron* relied on *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1180-1181 (11th Cir. 2011), when it found the ALJ erred by not including any of the mild findings from step two in the hypothetical questions to the vocational expert. *Agron*, 2020 WL 1496020 at *8. *Agron* is not persuasive as *Winschel* is distinguishable from this case. In *Winschel*, the ALJ determined at step two that Winschel's mental impairments caused a ***moderate*** limitation in maintaining concentration, persistence, and pace. 631 F.3d at 1180-1181. And the court reversed because, among other things, "the ALJ did not indicate that the medical evidence suggested Winschel's ability to work was unaffected by this limitation." *Id.* at 1181. But here, the ALJ thoroughly considered and discussed Finley's mental impairments and the related medical evidence throughout his decision and concluded they did not cause work limitations.

Moreover, the ALJ did not find any moderate mental limitations—he only

found Finley had ***mild*** limitations (a finding Finley does not challenge). An ALJ does not have to reflect such a finding in his RFC assessment or in the hypothetical question to a vocational expert. *See Williams v. Soc. Sec. Admin*., 661 F. App'x 977, 980 (11th Cir. 2016) (holding ALJ did not err in omitting limitations due to depression in the RFC assessment even though the ALJ found it caused mild limitations at step two); *Medwit v. Comm'r of Soc. Sec.*, No. 2:20-cv-143-JLB-NPM, 2021 WL 1341390, *5 (M.D. Fla. Feb. 22, 2021) ("Since the ALJ only assessed 'mild' limitations in the four areas of mental functioning, the ALJ did not err by not providing a mental RFC."), *report and recommendation adopted*, 2021 WL 1138179 (Mar. 25, 2021); *see also* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities."). In sum, the ALJ considered Finley's mental impairments both at step two and in the RFC analysis. (Tr. 14-16, 21-23). And substantial evidence supports the absence of any mental limitations in the RFC. Therefore, the ALJ did not commit reversible error.

### D.    The ALJ properly considered Finley's irritable bowel syndrome

Finley contends the ALJ failed to properly include or explain limitations in the RFC for his irritable bowel syndrome, which the ALJ found was a severe impairment. A finding that a medically determinable impairment is severe means the

impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c), 404.1522(a); *Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898 (11th Cir. 2010) ("By definition, a severe impairment limits significantly a claimant's ability to do basic work activities."). In such a case, an ALJ must "articulate what the claimant's significant limitations were from that impairment …." *Battles v. Colvin*, No. 8:15-cv-339-T-33TGW, 2016 WL 3360428, *3 (M.D. Fla. May 20, 2016), *report and recommendation adopted sub nom. Battles v. Comm'r of Soc. Sec.*, 2016 WL 3258423 (M.D. Fla. June 14, 2016); *see also Reis ex rel. Reis v. Astrue*, No. 8:11-cv-2027-T-TGW, 2012 WL 3231092, *4 (M.D. Fla. Aug. 6, 2012) ("The problem here is that the [ALJ] seemed skeptical of the plaintiff's claim of migraine headaches [] but he nevertheless found that it was a severe impairment. Having made that finding, the [ALJ] needed to articulate what the plaintiff's significant limitations were from that impairment and reasonably explain to what extent the plaintiff could work despite the limitations.").

When considering a claimant's subjective complaints, an ALJ must follow a two-step process. SSR 16-3p, 2017 WL 5180304, *3 (Oct. 25, 2017). First, the claimant must provide evidence of an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the claimant's symptoms. Second, the ALJ must evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's ability

- 17 -

to perform work-related activities. *Id.* at \*3-4.

If the objective medical evidence does not substantiate the claimant's statements about the intensity, persistence, and functionally limiting effects of symptoms, then the ALJ must consider other evidence in the record to determine if, and to what extent, the claimant's symptoms limit his ability to do work-related activities. This other evidence includes a claimant's daily activities; the location, duration, frequency, and intensity of the individual's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to relieve the symptoms; treatment, other than medication, for the symptoms; any other measure used to relieve the symptoms; and any other factors concerning functional limitations and restrictions due to the symptoms. *See* 20 C.F.R. §§ 404.1529(c), 404.1545(a)(3); SSR 16-3p, 2017 WL 5180304 at \*7-8. The regulations provide that, generally, a claimant's statements about his symptoms, alone, will not establish disability; there must also be objective medical evidence. *See* 20 C.F.R. § 404.1529(a)-(b).

The ALJ discounted Finley's characterization of his IBS symptoms given the "generally mild objective findings from physical examinations, his medical treatment history and activities of daily living." (Tr. 19, 333, 450, 507, 549, 677, 693, 793, 807, 1011, 1046-1047); *see* 20 C.F.R. § 404.1529(c)(2), (3)(i), (3)(iv)-(v). As for objective medical evidence, the ALJ discussed records from

gastroenterologist Randall Snyder, M.D. who examined Finley for IBS symptoms. Although Dr. Snyder diagnosed IBS and lactose intolerance, he only recommended increased fluid and fiber (and avoid spicy and fatty foods), which the ALJ characterized as very conservative treatment relative to Finley's complaints of spending sometimes twenty hours a day in the bathroom. (Tr. 20, 713, 722). The ALJ also referred to treatment notes during the relevant timeframe in which Finley denied abdominal pain and GI issues, and his bowel sounds were normal in all four quadrants on exam ("normal BS 4 Q"). (Tr. 21, 506-507, 560-561).

The ALJ also observed that as to Finley's IBS, "aggressive treatment was not recommended" and his gastroenterologist did not impose any limitations on him. (Tr. 21). Furthermore, the ALJ observed that Finley did not use adult diapers. (Tr. 19, 51-52, 57). And so, the ALJ concluded that Finley's "bowel impairment and obesity are well accounted for by postural, environmental, and lifting/carrying limitations." (Tr. 22).

Finley does ***not*** challenge the ALJ's recitation of the medical evidence, nor does he challenge the ALJ's treatment of his subjective complaints or any opinion evidence. So, the substance of the RFC discussion is unchallenged. Instead, Finley contends the ALJ was not clear enough about exactly which RFC limitations are directly attributed to IBS. And he claims the RFC fails to include a limitation for bathroom breaks. (Doc. 25, pp. 42-43).

The regulations do not impose a rigid articulation requirement for the RFC analysis. *See* 20 C.F.R. § 404.1545. Still, an ALJ "must make specific and well-articulated findings as to the effect of the combination of impairments when determining whether an individual is disabled." *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993). If not, it must be apparent or obvious from the record how the RFC accounts for a severe impairment. *See Nance v. Comm'r of Soc. Sec.*, No. 8:20-cv-507-NPM, 2021 WL 4305093, *5 (M.D. Fla. Sept. 22, 2021) (citing *Battles v. Colvin*, No. 8:15-cv-339-T-33TGW, 2016 WL 3360428, *3 (M.D. Fla. May 20, 2016), *report and recommendation adopted sub nom. Battles v. Comm'r of Soc. Sec.*, 2016 WL 3258423 (M.D. Fla. June 14, 2016)). This stems from the underlying requirement that ALJs must show they sufficiently considered the evidence to provide a reviewing court a basis to find substantial evidence for the decision. *See Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection which is 'not enough to enable [a court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'").

Here, the ALJ ***directly*** attributed Finley's IBS to the RFC's sedentary base and postural, environmental, and lifting/carrying limitations. (Tr. 22).[11] So, the ALJ

---

[11] After considering all the evidence of record, the ALJ determined Finley had the RFC to: lift and

provided an express link between IBS and the RFC. Even if this link was arguably vague, the ALJ sufficiently discussed IBS and it is apparent why bathroom breaks were not included in the RFC. *Cf. Raduc v. Comm'r of Soc. Sec.*, 380 F. App'x 896, 898-899 (11th Cir. 2010) (reversing where "ALJ did not meaningfully conduct the proper legal analysis about the effect of Raduc's IBS," which was a severe impairment, on her RFC). As discussed above, the ALJ did not find Finley's testimony about bathroom breaks fully supported by the evidence, and the ALJ explained why. In sum, the ALJ properly accounted for Finley's IBS, the RFC is supported by substantial evidence, and Finley has not shown error.

## E. The ALJ properly considered Finley's past relevant work

Finley claims the ALJ should not have concluded that he can still perform his past relevant work, which included work as an advertising manager, an advertising production manager, and an order clerk. Past relevant work is defined as "work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1). A claimant has the burden of developing the record about his past

---

carry ten pounds occasionally and five pounds frequently; sit for six hours in an eight-hour workday; stand or walk for two hours in an eight-hour workday; no operation of foot controls; permitted to stand and stretch after 30 minutes of work while being off task for one minute; occasional climbing of ramps or stairs but no climbing of ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling and crouching; no crawling; frequent overhead reaching with the right upper extremity; must avoid concentrated exposure to vibration; and no exposure to hazardous machinery. (Tr. 18).

work, not the ALJ. *See, e.g.*, *Marchand v. Astrue*, No. 8:11-cv-2458-T-TGW, 2012 WL 6733028, *3 (M.D. Fla. Dec. 28, 2012). And at the fourth step of the sequential evaluation, the burden lies with the claimant to show that he cannot return to his past relevant work as he actually performed it or as it is performed in the general economy. *See Barnes v. Sullivan*, 932 F.2d 1356, 1359 (11th Cir. 1991); *Levie v. Comm'r of Soc. Sec.*, 514 F. App'x 829, 830 (11th Cir. 2013); *Battle v. Astrue*, 243 F. App'x 514, 522 (11th Cir. 2007); *Waldrop v. Comm'r of Soc. Sec.*, 379 F. App'x 948, 953 (11th Cir. 2010). In fact, Social Security regulations "place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

Even though the burden lies with the claimant, the ALJ must consider all duties of the claimant's past relevant work and evaluate his ability to perform that work in spite of his impairments. *Levie*, 514 F. App'x at 830. So, when determining whether a claimant can perform past relevant work, the ALJ may consult vocational experts and the DOT, among other resources. 20 C.F.R. § 404.1560(b)(2). Also, the "claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work." SSR 82-62, 1982 WL 31386, *3 (S.S.A. 1982); *see Cantu v. Comm'r of Soc. Sec.*, No. 2:19-cv-832-

MRM, 2021 WL 960686, *4 (M.D. Fla. Mar. 15, 2021).

First, Finley claims he could not perform any of his past relevant work as actually performed due to the standing and walking or sitting requirements. In particular, he argues all of his past relevant work as actually performed required him to stand or walk for four hours in an eight-hour workday with the exception of the order clerk. (Tr. 195-201). He claims this conflicts with the RFC that limits him to no more than two hours of standing or walking in an eight-hour workday. (Tr. 18). And he claims the occupation of order clerk, which requires sitting for eight hours in an eight-hour workday, conflicts with the RFC limitation of sitting no more than six hours. (Tr. 18). (Doc. 25, p. 28)

Upon closer inspection, Finley mischaracterized the amount of walking and standing from his past relevant work. The advertising manager and advertising production manager jobs as actually performed only required two hours of standing or walking, which coincides with the RFC. (Tr. 197, 199, 201). He is, however, correct that his past job as an order clerk, as actually performed, required 8 hours of sitting. (Tr. 198).

In any case, once the ALJ properly found Finley could perform one of his occupations that qualified as past relevant work either as actually performed or as generally performed, then the ALJ properly found he could perform past relevant work and was not disabled. *See* 20 C.F.R. §§ 404.1520(f); 404.1560(b)(2); *see also*

SSR 82-61, 1982 WL 31387 at *2 ("[W]here the evidence shows that a claimant retains the RFC to perform the functional demands and job duties of *a* particular past relevant job as he or she actually performed it, the claimant should be found to be 'not disabled.'") (emphasis added). Plus, Finley has neither argued, nor shown that he could not perform his past relevant work as generally performed. *See generally Waldrop*, 379 F. App'x at 953 (finding ALJ adequately found claimant could perform past relevant work as it is generally performed despite claimant's arguments that the record contained limited information about her duties as actually performed).

Second, Finley argues he *may* not have performed the advertising manager and production manager jobs long enough to learn to do them. (Doc. 25, p. 29). But as the Commissioner points out, Finley has the burden to prove past work is not past relevant work, and he never makes a direct argument that he did not learn the jobs at issue. (*Id.* p. 35).

The duration requirement for past relevant work "refers to the length of time during which the person gained job experience. It should have been sufficient for the worker to have learned the techniques, acquired information, and developed the facility needed for average performance in the job situation. The length of time this would take depends on the nature and complexity of the work." SSR 82-62, 1982 WL 31386 at *2. For each occupation, the DOT lists an SVP, which is defined as "the amount of lapsed time required by a *typical worker* to learn the techniques,

acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, Specific Vocational Preparation (SVP), 1991 WL 688702 (4th ed. 1991) (emphasis added). Thus, "the DOT does not mandate that every worker needs to perform a particular job for the period of time associated with that job's SVP level in order to learn how to perform the job." *Bond v. Comm'r of Soc. Sec.*, No. 6:15-cv-333-ORL-GJK, 2016 WL 3906929, *3 (M.D. Fla. July 19, 2016) (finding work as an office manager (SVP rating of 7) for ten months was long enough for claimant to learn to do the job where he described the job's duties in detail and never indicated that he did not have enough time to learn to do the job). Moreover, the agency's Program Operations Manual System (POMS) specifically instructs adjudicators to:

> Use specific vocational preparation (SVP) information only as a guideline to help determine how long it would generally take to learn a particular job. SVP may not accurately reflect the requirements of the job as the claimant performed it. If the [DOT] indicates a high SVP level for a particular job, consider the length of time the claimant did the job and the claimant's education when determining if the work lasted long enough to be relevant.

POMS DI 25005.015. Agency policy further explains that education is an important factor in evaluating whether a claimant did a job long enough to learn it, particularly at skilled levels of SVP 5-9. POMS DI 25001.001.

Moreover, although the Commissioner "usually" or "generally" does not consider work performed fifteen years or more before the decision date or date last insured, the fifteen-year period is a guideline, not a strict rule. *See* 20 C.F.R.

§ 404.1565(a); SSR 82-62, 1982 WL 31386 at *2 ("[I]n some cases [work] performed prior to the 15-year period may be considered as relevant when a continuity of skills, knowledge, and processes can be established between such work and the individual's more recent occupations."). "[T]he fifteen year limitation described in the regulations does not create a prohibition against considering work outside that period." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Rather, it is "intended to ensure that remote work experience which could not reasonably be expected to be of current relevance is not applied." SSR 82-62, 1982 WL 31386 at *2; *see also Waldrop*, 379 F. App'x at 952 ("The 15-year time-frame is advisory in nature, and its purpose is to ensure that the ALJ does not use an outdated job description in his determination of whether the claimant can perform her past relevant work.").

Here, Finley notes the advertising manager job has an SVP 8, which means that it generally takes four to ten years to learn. Manager, Advertising, DOT 164.117-010, 1991 WL 647316. However, he claims he performed this job for only three years between April 2009 and April 2012. (Tr. 195, 197). He also points out the job of production manager has an SVP 7, which means it generally takes two to four years to learn. Production Manager, Advertising, DOT 141.137-010, 1991 WL 647102. Finley equivocally states that while he performed this job for three years, this was "not necessarily sufficient time to learn to do this job because it may require

up to 4 years to learn." (Doc. 25, p. 29; Tr. 195, 199).

Finley has not met his burden to show that these jobs are not past relevant work. Finley completed two years of college and obtained an associate degree in Commercial Art. (Tr. 165, 338). As for the advertising-production-manager job, Finley worked this job eight hours a day, five days a week, and he used technical knowledge or skills. (Tr. 199). Notably, his experience fits squarely in the general time frame for an individual to learn the job. And Finley fails to assert directly that it was not long enough for him to do so.

With respect to the advertising-manager job, Finley had relevant work experience that occurred more than fifteen years before the date last insured that shows he had more experience as an advertising manager than he admits. From 1996 to 2001 (five years), Finley worked as a Vice President of Marketing, a job that entailed coordinating and managing an in-house advertising agency. (Tr. 195, 201). He worked eight hours a day, five days a week, and made $56,000 dollars per year. (Tr. 201). He was a lead worker and had to hire and fire employees. (Tr. 201). And during the relevant fifteen-year period, Finley worked full time as an advertising manager from April 2009 to April 2012 (three years) and made $75,000 per year. (Tr. 197). Finley has not sufficiently shown he did not work these past jobs long enough to learn them.

Finally, Finley contends the ALJ should not have assessed the job of order

clerk as generally performed because it was a composite job of order clerk and customer service representative or even receptionist. He claims this was because he not only had to place orders, but also answer the phone. (Doc. 25, p. 29). A composite job is one that has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." SSR 82-61, 1982 WL 31387, *2. For past relevant work to qualify as a composite job, the main duties of the past relevant work must include multiple DOT occupations as described by the plaintiff. *See Smith v. Comm'r of Soc. Sec.*, 743 F. App'x 951, 954 (11th Cir. 2018) (citing Program Operations Manual System ("POMS") DI 25005.020).

It is not reasonable to believe that the duty of answering the phone—something that would be expected in almost any office job—means that Finley's job required significant elements of more than one job. The job of order clerk includes processing materials or merchandise received by telephone and informing customers of order information by telephone. Order Clerk, DOT 249.362-026, 1991 WL 672320. Finley has not shown that answering the phones was one of his "main duties" as required to show it was a composite job. *Smith*, 743 F. App'x at 954.

As a general matter, Finley never objected to the vocational expert's testimony that these jobs qualified as past relevant work. (Tr. 39-66). Therefore, the ALJ was under no obligation to further discuss or investigate whether the cited jobs were past relevant work. *See, e.g.*, *Schlegel v. Comm'r of Soc. Sec.*, No. 6:16-cv-

1236-Orl-DCI, 2017 WL 2379811, *2-3 (M.D. Fla. June 1, 2017) (noting claimant's failure to raise the issue to the ALJ of whether a past job constituted past relevant work was "fatal" to his argument to the contrary as the claimant, "who was represented by counsel, failed to make any argument or showing at the hearing to carry his burden of demonstrating otherwise"); *New v. Comm'r of Soc. Sec.*, No. 5:12-cv-211-Oc-18PRL, 2013 WL 3804846, *3 (M.D. Fla. July 8, 2013) (holding that because claimant failed raise the issue of whether her prior work was past relevant work to the ALJ or object to the vocational expert's testimony, "the ALJ was not obligated to specifically address the concerns—or rather, arguments—that Plaintiff now raises") (citing *Whittemore v. Comm'r of Soc. Sec.*, No. 3:09-cv-1242-J-MCR, 2011 WL 722966 (M.D. Fla. Feb. 23, 2011) (same)). And courts in this district have previously rejected arguments that a claimant did not learn how to do the job, in part, when they failed to raise objections to the vocational expert's testimony at the hearing that the claimant could perform his past work. *E.g.*, *Turner v. Comm'r of Soc. Sec.*, No. 2:13-cv-485-FtM-DNF, 2014 WL 4542975, *4 (M.D. Fla. Sept. 12, 2014); *Heywood v. Comm'r of Soc. Sec.*, No. 2:17-cv-316-FtM-MRM, 2018 WL 4237693, *8 (M.D. Fla. Sept. 6, 2018). In sum, Finley has not shown that the ALJ erred at step four.

## III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard. Accordingly, the decision of the Commissioner should be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court should be directed to enter judgment in Defendant's favor.

Respectfully recommended on August 5, 2022.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**